# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

        v.          :      CRIMINAL NO. 22-457

RONALD C. GRANVILLE      :

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Everett Witherell and Michael Miller, Assistant United States Attorneys, hereby submits this Sentencing Memorandum in anticipation of the hearing scheduled for April 21, 2026.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I.   BACKGROUND

On December 8, 2022, the United States Attorney's Office for the Eastern District of Pennsylvania filed a two-count Information against the defendant, Ronald C. Granville. Count One charges him with deprivation of rights under color of law and aiding and abetting, in violation of 18 U.S.C. §§ 242 and 2. Count Two charges him with falsification of records and aiding and abetting, in violation of 18 U.S.C §§ 1519 and 2.

On January 9, 2023, the defendant appeared before the Honorable Karen S. Marston, waived prosecution by Indictment, and pled guilty to Counts One and Two of the information, pursuant to a written plea agreement.

## II.   FACTS OF THE CASE

The defendant agreed with the following facts at his change of plea hearing:

If this case were to proceed to trial, the government would introduce competent evidence which would establish that on October 6, 2020, defendant Ronald Granville was working as a Correctional Sergeant for the Philadelphia Department of Prisons ("PDP") at the Curran-

Fromhold Correctional Facility ("CFCF") in Philadelphia, Pennsylvania. The PDP was a department of the City of Philadelphia which was responsible for operating Philadelphia's jails and for the care, custody, and safety of the inmates housed at PDP facilities such as CFCF.

On October 6, 2020, the defendant was ordered by a Correctional Lieutenant to supervise a strip search of an individual whose initials were V.H., who was housed at CFCF awaiting resolution of criminal charges. At approximately 9:00 p.m., the defendant and four correctional officers escorted V.H. to his cell to conduct the strip search. After V.H. complied with the correctional officers' orders and was naked, the defendant and other correctional officers punched, kicked, and assaulted V.H. numerous times and knocked him to the ground. As a result of the assault on V.H. by the defendant and the correctional officers, V.H. was hospitalized with injuries to his face, ribs, and scrotum, and had to undergo emergency surgery.

During the approximately four weeks following the assault on V.H., the defendant worked with the Correctional Lieutenant who ordered the strip-search and the officers who escorted V.H. to his cell on October 6th to submit false reports about the assault on V.H. In the false reports, the defendant, the lieutenant, and the officers made up facts about V.H.'s aggression and minimized the level of force used by the officers and the nature of the blows applied by the correctional officers, in order to conceal the use of excessive and unreasonable force against V.H. on October 6, 2020. The defendant knew that the false reports he submitted and helped to submit could be used in an investigation of the use of force, including investigations by the prison and the City of Philadelphia, and also by federal law enforcement authorities such as the FBI, an agency of the United States.

### III.    SENTENCING CALCULATION

#### A.    Statutory Maximum Sentence.

The Court may impose the following statutory maximum sentence on each count:

Count One, deprivation of rights under color of law in violation of 18 U.S.C. § 242: up to 10 years of imprisonment, 3 years of supervised release, a $250,000 fine, and a $100 special assessment;

Count Two, falsification of records in violation of 18 U.S.C. § 1519: up to 20 years of imprisonment, 3 years of supervised release, a $250,000 fine, and a $100 special assessment.

The total maximum statutory penalty that can be imposed is: up to 30 years of imprisonment, 3 years of supervised release, a $500,000 fine, and a $200 special assessment. Full restitution shall also be ordered.

#### B.    Sentencing Guidelines Calculation.

The Probation Office correctly calculated the defendant's advisory guideline range as follows:

Counts One and Two are grouped pursuant to USSG §3D1.2(c) because one of the counts embodies conduct that is treated as a specific offense characteristic in the guideline applicable to the other count. Calculations are made on both counts and the count resulting in the higher offense level is applied. In this case, Count One (deprivation of rights under color of law) calculated under USSG § 2H1.1 results in the higher offense level than Count Two (obstruction of justice).[2]   The guideline for a violation of 18 U.S.C. § 242 is USSG § 2H1.1. Pursuant to §

---

[2] Count Two is calculated at USSG § 2J1.2. The cross reference at § 2J1.2(c)(1) is applicable; however, cross referencing to USSG § 2X3.1 (accessory after the fact) does not result in a higher offense level; therefore, the offense level under USSG § 2J1.2 would be 14.

2H1.1(a)(1), the base offense level is the offense level from the guideline for the underlying offense. The underlying offense is aggravated assault which is calculated at USSG § 2A2.2. The base offense level is determined as follows:

- Since the underlying offense is aggravated assault, the base offense level is 14, pursuant to USSG § 2A2.2(a).

- The victim sustained serious bodily injury, therefore, 5 levels are added, pursuant to USSG § 2A2.2(b)(3)(B).

- The resulting base level is 19.

The offense was committed under color of law; therefore, the offense level is increased by six levels, pursuant to USSG § 2H1.1(b)(1)(B), resulting in an offense level of 25. The defendant admitted to the crime of aiding and abetting the falsification of records, which he knew would likely thwart an investigation or prosecution of the assault. Since the defendant willfully obstructed or impeded the administration of justice, the offense level is increased by two levels, pursuant to USSG § 3C1.1. This results in an adjusted offense level of 27.

The defendant has demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG § 3E1.1(a). The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level. USSG § 3E1.1(b). Subtracting 3 levels from 27 leads to a total offense level of 24. Based upon a total offense level of 24 and a criminal history category of I, the guideline imprisonment range is 51 to 63 months.

IV.     **GOVERNMENT'S RECOMMENDATIONS CONCERNING SENTENCING**

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

B.     **Application**

The relevant § 3553(a) factors will be discussed in turn.

1.      **The nature and circumstances of the offenses and the history and characteristics of the defendant.**

The offense conduct in this case was grave. Ronald Granville was a Correctional Sergeant entrusted with the safety and custody of an inmate inside a Philadelphia jail. Instead of upholding that duty, he participated in the assault of a compliant and naked inmate, V.H., causing injuries serious enough to require hospitalization and emergency surgery. He then participated in the submission of false reports designed to conceal the assault and frustrate any later investigation. These were not technical violations or momentary lapses without consequence. They were serious federal crimes involving both violence under color of law and a deliberate effort to cover it up.

The government does not minimize the seriousness of that conduct. Civil rights offenses committed by correctional staff strike at the integrity of the justice system itself. Inmates are wholly dependent on correctional officers for their safety. When a correctional officer abuses his power, the harm extends beyond the individual victim and undermines confidence in the rule of law. Granville's position as a sergeant makes his conduct more serious, not less serious, because he held supervisory authority and was expected to model lawful conduct for subordinate officers.

But the history and characteristics of this defendant are also highly unusual and highly relevant. Defendant Granville has no prior criminal record. Before this offense, he had lived a law-abiding life. He served for many years in law enforcement and corrections, including as a detention officer and deputy sheriff with the Charleston County Sheriff's Office from 2004 through 2014, before later serving with the Philadelphia Department of Prisons. He is also the father of two children. This is not a case involving a defendant with a history of criminal conduct, recidivism, or disregard for the law over time.

Most importantly, defendant Granville accepted responsibility at the earliest meaningful stage of this case. Before formal indictment, he acknowledged his criminal conduct, waived indictment, and entered a guilty plea to an Information in January 2023 pursuant to a written plea agreement. His prompt acceptance of responsibility spared the government and the Court the burden of prolonged litigation and reflects genuine recognition of wrongdoing. Unlike many defendants convicted of serious public-corruption or civil rights offenses, defendant Granville did not attempt to deny responsibility, minimize his conduct through contested proceedings, or force victims and witnesses to endure trial proceedings as to his guilt.

This factor cuts in two directions. Defendant Granville's supervisory role aggravates the offense. But his early acceptance of responsibility, prompt guilty plea, lack of criminal history, family responsibilities, and otherwise law-abiding life strongly distinguish him from many other defendants convicted of civil rights offenses and make him an unusual defendant for sentencing purposes.

2. **The need for the sentence imposed to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses and the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.**

A substantial sentence is not required in every serious case to reflect the seriousness of the offense or promote respect for the law. Defendant Granville's crimes were undeniably serious, and the Court's sentence must recognize that seriousness. At the same time, the sentence must also account for the fact that defendant Granville accepted responsibility promptly, admitted his guilt before indictment, and entered a guilty plea at an early stage of the prosecution.

General deterrence remains important. Correctional officers must understand that assaults on inmates and falsification of official reports will be prosecuted and punished. But deterrence is not measured solely by the length of imprisonment imposed. Respect for the law is also promoted

when courts distinguish between defendants who promptly acknowledge wrongdoing and those who deny responsibility or obstruct accountability.

Specific deterrence and protection of the public carry less weight here than in many cases. Defendant Granville has no criminal history. The offense conduct occurred years ago. Since then, while fully aware of the federal investigation and prosecution, he has remained arrest-free and has not engaged in further criminal conduct. He has already suffered substantial collateral consequences, including the loss of his corrections career, likely pension consequences, public exposure, and the inability to work again in law enforcement. Those consequences, coupled with this prosecution and conviction, substantially reduce any risk of recidivism.

3. **The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

The government is aware of no unusual need for educational, vocational, medical, or correctional treatment that would warrant a term of imprisonment in this case. To the extent the Court concludes that continued structure and monitoring are appropriate, those interests can be addressed through a sentence including supervised release and appropriate conditions.

4. **The guidelines and policy statements issued by the Sentencing Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

The advisory guideline range remains an important benchmark, and the Court should begin with that range. However, in this case a below-guideline sentence would not create an unwarranted disparity. Sentencing requires individualized assessment, and defendant Granville is not similarly situated to defendants who denied responsibility, forced contested litigation, or possess criminal histories. His early plea, acceptance of responsibility, lack of prior record, and substantial collateral consequences distinguish him meaningfully from other similarly charged defendants.

## V.    CONCLUSION

In sum, the government submits that the Court should consider not only the gravity of defendant Granville's offense conduct, but also the unusual and substantial mitigating considerations present here: his complete lack of criminal history, his prior law-abiding life, his family responsibilities, his early guilty plea, his prompt acceptance of responsibility before indictment, his law-abiding conduct since the offense, and the serious collateral consequences he has already suffered. The government's final recommendation concerning the appropriate sentence appears in the sealed supplement.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s EVERETT WITHERELL*
EVERETT WITHERELL
Assistant United States Attorney

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this Sentencing Memorandum has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:


James Funt ESQ.



/s *Everett Witherell*
EVERETT WITHERELL
Assistant United States Attorney



DATED:  April 14, 2026.